MARTIN J. BRILL (SBN 53220)
TODD M. ARNOLD (SBN 221868)
LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: mjb@lnbrb.com, tma@lnbrb.com

Attorneys for Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re<br><br>AGUA DULCE VINEYARDS, LLC, a California limited liability company,<br><br>               Debtor.<br>―――――――――――――――――<br>In re<br><br>CATHERINE P. MACADAM and DONAL J. MACADAM,<br><br>               Debtors.<br>―――――――――――――――――<br>☒ Affects All Debtors<br><br>☐ Affects Agua Dulce Vineyards, LLC only<br><br>☐ Affects Catherine P. MacAdam and<br>    Donal J. MacAdam only | Lead Case No. 1:09-bk-15207-MT<br>(Jointly Administered with Catherine P. MacAdam and Donal J. MacAdam – Case No. 1:09-bk-17476-MT)<br><br>Chapter 11 Cases<br><br><br>**AGUA DULCE VINEYARDS, LLC'S REPLY TO THE OBJECTION OF WESTERN COMMERCIAL BANK TO DEBTORS' MOTION TO EXTEND THE EXCLUSIVITY PERIODS FOR THE DEBTORS TO FILE A PLAN OR PLANS AND OBTAIN ACCEPTANCE THEREOF; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF CATHERINE P. MACADAM IN SUPPORT THEREOF**<br><br><br>Hearing:<br>Date: October 7, 2009<br>Time: 1:00 p.m.<br>Place: Courtroom "302"<br>       21041 Burbank Boulevard<br>       Woodland Hills, California 91367 |

1

Agua Dulce Vineyards, LLC ("ADV") hereby files its reply (the "Reply") to the objection (the "Objection") of Western Commercial Bank (the "Bank") to ADV's motion (the "Motion") for an order extending the exclusivity periods for ADV and Catherine P. and Donal J. MacAdam (the "MacAdams," and together with ADV, the "Debtors") to file a plan or plans and obtain acceptance thereof.[1]  Unless otherwise stated, all capitalized terms herein have the same meanings as in the Motion.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.**

<u>**INTRODUCTION**</u>

The pertinent facts discussed in the Motion and below demonstrate that cause exists to grant the Motion.  The Bank devotes a substantial portion of its Objection to raising an issue as to the value of ADV's equity in its property.  This is a red herring.  The issue of ADV's equity in its property goes to the question of whether or not the Bank is adequately protected, not the question of whether or not ADV should be granted an extension of time to file its plan and gain acceptance thereof.  This is not the proper context for a valuation contest.

Stripped of this irrelevant issue, the Bank's Objection raises only two issues that actually have some relevance to a determination of the merits of the Motion: (1) whether ADV is current on its post-petition tax obligations, and (2) whether ADV has made progress towards formulating a plan of reorganization.  Due to confusion over the information to be reported in its Monthly Operating Reports, ADV overstated its post-petition tax obligations.  ADV has been in regular and constant contact with all taxing authorities and has made provisions to bring all taxing authorities post-petition current on or before October 31, 2009.  It is true that ADV's income is behind projections by 50 to 60 days.  This is largely a result of the fact that with bulk wine sales, a relatively new income source for ADV, invoiced payment terms are often based on the date the

---

[1] By way of its Objection, the Bank did not object to the Motion insofar as it seeks to extend the time for the MacAdams to file a plan and obtain acceptance thereof.  Therefore, this Reply is limited to issues raised by the Bank regarding ADV's request for an order extending the time for it to file a plan and obtain acceptance thereof.

1    wine is shipped versus the date the purchase order is received.  However, in October ADV

2    expects to receive sufficient funds to bring all taxing authorities post-petition current.

3            In regard to ADV's progress towards formulating a plan, as admitted by the Bank, prior

4    to the filing of the Bank's Objection, ADV approached the Bank to discuss terms for a

5    consensual plan of reorganization.  In addition, ADV recently opened negotiations with an

6    investor that may be interested in purchasing an equity interest in ADV, which would help

7    finance a plan of reorganization for the benefit of all creditors.  The Bank is aware of this

8    potential investor.  ADV has been feverishly working to prepare updated and current interim

9    financial statements and a 5-year cash flow projection for the potential investor which reflect the

10   changed circumstances resulting from the Bank's recent foreclosure on the Vineyard Property

11   less than a week ago.[2]  ADV will not be able to continue its negotiations with the investor until

12   the cash flow projections are completed, but ADV expects to provide such information to the

13   potential investor and to resume negations next week.  Moreover, as was discussed in the

14   Motion, the general claims bar date in ADV's case only recently passed on August 17, 2009.

15   ADV has started its claims analysis and reconciliation process in conjunction with providing

16   information to the potential investor.  However, the government claims bar date will not pass

17   until October 31, 2009.  Thus, ADV (and the potential investor) will not be able to complete the

18   claims analysis process until early November 2009.  Only once all claims bar dates have passed,

19   and ADV has had a chance to determine if a relationship with the potential investor is feasible

20   would it be appropriate for ADV to prepare and file a disclosure statement and plan.  ADV's

21   plan will look markedly different depending on whether ADV is going to seek to reorganize on

22   its own or with a new equity contribution.  It would be harmful to creditors to force ADV to

23   incur fees and expenses to prepare a disclosure statement and plan based on a false assumption as

24   to the underlying method of, and means for, reorganization.  The better course of action would

---

26   [2] Notably, in conjunction with the Objection, the Bank asserted that the Vineyard Property was worth $3.7 million.
27   See Declaration of Ben F. Tunnel in support of the Objection, at Exhibit "1," p. 2.  The Bank recently foreclosed on
     the Vineyard Property for a credit bid of approximately $1.3 million.   Accordingly, the Bank received a windfall in
     excess of $2.4 million when it foreclosed on the Vineyard Property and is clearly not being prejudiced by any delay
28   in ADV's formulation of a plan.

3

1  be to grant ADV a short extension to November 30, 2009 to complete its negotiations with its

2  potential investor, to complete its claims analysis, and to formulate and file a plan of

3  reorganization.

II.

ADDITIONAL RELEVANT FACTS

**A.  POTENTIAL INVESTOR**

7       In early September 2009, ADV came into contact with W/F Investment Corp. ("WFIC")

8  regarding a potential investment by WFIC in ADV.  Since that time, ADV has met with

9  representatives of WFIC regarding terms for an investment by WFIC.  ADV has provided WFIC

10 with preliminary financial information, but in order for WFIC to continue its due diligence and

11 for the parties to continue their negotiations, WFIC needs income, expense, and profit

12 projections.

13      ADV's financial position was recently materially altered as a result of the Bank's

14 foreclosure on the Vineyard Property on September 25, 2009.  Up to the time of the foreclosure,

15 ADV believed that the junior lien holder on the Vineyard Property, or some other party,

16 including WFIC, might bid on the Vineyard Property and seek to work with ADV to manage the

17 Vineyard Property, or invest in ADV.  Therefore, until the foreclosure sale was concluded, ADV

18 had no factual basis to prepare amended projections which accounted for the recently changed

19 circumstances resulting from the Bank's foreclosure on the Vineyard Property.

20      Immediately after the September 25, 2009 foreclosure sale, ADV began working on

21 updated cash flow projections and modifications to ADV's balance sheet.  Contrary to the

22 Bank's contention, preparing the revised projections and balance sheet is not a simple task.  This

23 is a complex task that requires thorough attention to detail in reviewing all financial records.

24 Preparing revised projections and balance sheets involves removing income and expenses

25 (including, business tax, excise tax, property tax, utility, interest, insurance, payroll and payroll

26 tax, etc. expenses) that are related to the operation of the Vineyard Property, as well as the

27 reduced overall liability to the Bank that resulted from the foreclosure.  All of the projections and

28 updated records must then be reviewed and vetted before being provided to potential investors,

or attached to a disclosure statement. Despite the foregoing complexities, ADV expects to complete its revised projections, to provide WFIC with such projections, and to resume negotiations with WFIC during the week of October 5, 2009. A copy of ADV's <u>preliminary</u> revised projections is attached hereto as Exhibit "1." These projections will be modified over the coming days before a final version of the revised projections is provided to WFIC. It is important to note that the attached projections do not take into account any new value contribution from WFIC or any other prospective new investor.

In addition to unavoidable delays in completing ADV's due diligence documentation for WFIC, which arose from the need for ADV to prepare updated cash flow projections and balance sheets, WFIC's due diligence has also been affected to some degree because the general claims bar date only recently passed August 17, 2009 and the government claims bar date will not pass until October 31, 2009.

**B.      POST-PETITION TAX OBLIGATIONS**

In ADV's Monthly Operating Reports (each an "MOR"), ADV mistakenly overstated its post-petition tax obligations, due to ADV's mistaken interpretation of what was being asked in "III. TAX LIABILITIES FOR THE REPORTING PERIOD" and its subsequent schedule and chart. Each MOR requires the following information:

///

///

///

## III. TAX LIABILITIES

FOR THE REPORTING PERIOD:

Gross Sales Subject to
Sales Tax: _____

Total Wages Paid: _____

|  | Total Post-Petition Amounts Owing | Amount Delinquent | Date Delinquent Amount Due |
|---|---|---|---|
| Federal Withholding |  |  |  |
| State Withholding |  |  |  |
| FICA- Employer's Share |  |  |  |
| FICA- Employee's Share |  |  |  |
| Federal Unemployment |  |  |  |
| Sales and Use |  |  |  |
| Real Property |  |  |  |
| Other: _____ |  |  |  |
| TOTAL: | 0.00 | 0.00 |  |

ADV was confused by the formatting of the section title (as it is separated by a few lines) and believes that "Total Post-Petition Amounts Owing" and "Amount Delinquent" were both supposed to be cumulative, rather than solely for the relevant reporting period. ADV also inadvertently (1) included the "Total Post-Petition Amounts Owing" in the "Amount Delinquent," such that there is a large amount of double counting, and (2) did not include "Sales and Use" taxes.

After reconciling its books and records, taking into account negotiations with taxing authorities regarding amounts owed and the dates such amounts are due, the foregoing information in the MOR for August 2009 should state the following regarding cumulative post-petition tax obligations and delinquencies:

/ / /

/ / /

/ / /

6

# III. TAX LIABILITIES

FOR THE REPORTING PERIOD:

Gross Sales Subject to Sales Tax:  $40,428.67

Total Wages Paid: _____

| | Total Post-Petition Amounts Owing | Amount Delinquent | Date Delinquent Amount Due |
|---|---|---|---|
| Federal Withholding | $16,825.48 | $13,058.60 | 10/30/09 |
| State Withholding | $2,726.29 | $1,944.72[3] | 10/31/09 |
| FICA- Employer's Share | N/A – Included in Federal Withholding Amount | N/A – Included in Federal Withholding Amount | N/A – Included in Federal Withholding Amount |
| FICA- Employee's Share | N/A – Included in Federal Withholding Amount | N/A – Included in Federal Withholding Amount | N/A – Included in Federal Withholding Amount |
| Federal Unemployment | N/A – Included in Federal Withholding Amount | N/A – Included in Federal Withholding Amount | N/A – Included in Federal Withholding Amount |
| Sales and Use | $2,625.56 | $2,625.56[4] | 7/30/09 |
| Real Property | $7,000.00[5] | $0 | 12/10/2009 |
| Other: | | | |
| TOTAL: | $29,177.73 | $17,628.88 | |

As can be seen from the preliminary revised projections attached hereto as Exhibit "1," ADV expects to have sufficient funds to bring the foregoing post-petition tax liabilities current in October 2009. Most notably, ADV expects to receive approximately $93,000 in payments on outstanding invoices from Blue Moon Winery and Chateau Diane in October 2009. A portion of these funds will be used to bring ADV current on the foregoing tax post-petition tax obligations.

---

[3] See Exhibit "2" hereto, a statement dated September 11, 2009 from the Employment Development Department regarding pre- and post-petition state withholding tax obligations.
[4] This is the amount owing for sales taxes from the Petition Date of May 4, 2009 through the end of the second quarter of 2009 pursuant to ADV's Sales Tax Return for the second quarter of 2009, ending on June 30, 3009, which was filed by ADV on July 30, 2009. This is the only post-petition sales tax currently owed by ADV, as the Sales Tax Return for the third quarter of 2009 and accompanying payment will not be due until October 31, 2009. ADV has informed the State Board of Equalization that the payment owing for the post-petition portion of sales taxes for the second quarter of 2009 and the third quarter of 2009 will be paid by October 31, 2009.
[5] Reduced liability based on September 25, 2009 foreclosure sale of the Vineyard Property.

In order to ensure that ADV remains current on its post-petition federal tax obligations on a going forward basis, ADV has enrolled in the Electronic Federal Tax Payment System so that it can make automated electronic payments for federal tax obligations.

**C.**  **OPERATIONS**

Collectively attached hereto as Exhibit "3" are copies of the budget to actual comparisons of ADV's projected income and expenses as set forth in the budget attached to the cash collateral motion approved by this Court against ADV's actual performance for June through August 2009. As can be seen, ADV projected income of $344,500 and expenses of $342,238 for the foregoing period, whereas the actual income and expenses for this period were $178,242 and $227,551. As noted in the budget to actual comparisons, ADV is behind about 50 to 60 days in its income projections and collection of the same. For example, in June 2009, the actual income for Bulk Wine Sales was $37,608 less than projected. However, ADV had booked an additional $36,303 in sales in June 2009 but had not yet collected the account receivable for the sales. In July 2009, the actual income for Bulk Wine Sales was $38,548 less than projected. However, ADV had booked an additional $54,000 in sales in July 2009 but had not yet collected the account receivable for the sales. In August 2009, the actual income for Bulk Wine Sales was $54,000 more than expected. In addition, ADV booked an additional $39,348 in sales in August 2009 but has not yet collected the account receivable for the sales.

Another major element of ADV's projected income, Sales-Wine Club, has also lagged. This is due in part to the credit card fiasco discussed in the Motion at ¶¶ 13-14 (i.e., the double billing of Wine Club members resulting from a computer glitch when ADV converted to a new credit card processing system which caused a loss of members and revenue when ADV had to make refunds to members and the credit card companies concurrently debited ADV's account for refunds to the same customers). Another reason for lower than projected Wine Club revenue is due to the slow transition of Wine Club members into the more secure Verepay automated invoicing software, and the termination of ADV's ability to accept American Express cards for payment. Prior to November 2008, approximately one-third of ADV's Wine Club members used American Express cards as the card on file to be used for their Wine Club auto invoicing. While

many of the American Express customers provided replacement Visa or MasterCard credit cards for such auto invoicing, transitioning to new cards is time consuming and tedious. ADV is continuing to work with BCC Merchant Solutions to reconcile the double refunds to customers and to recover as much as possible from credit card companies for improper debits to make refunds to customers who had already received refunds directly from ADV. Once this reconciliation process is completed, ADV should catch-up on some of the projected Wine Club income that was not realized in June through August 2009. Likewise, Wine Club revenue should continue to increase as ADV obtains replacement credit cards for Wine Club members who previously used American Express credit cards.

Other major contributing factors to the discrepancy in projected and actual Wine Club income are (1) the time it is taking ADV to recover past Wine Club members that were lost as a result of the credit card processing problem, and (2) economic conditions and seasonality affecting ADV's ability to attract new Wine Club members. ADV is continuing to work to recover prior Wine Club members and obtain new Wine Club Members. These efforts have been stymied by the general economic decline and traditional low point in Wine Club membership that coincided with the filing of ADV's bankruptcy case. Fortunately, ADV has made advances on both fronts. In fact, there was a marked increase in Wine Club income between July and August 2009 ($8,543 versus $20,981, respectively). ADV expects Wine Club income to continue to increase over the next few holiday months, which are traditionally the strongest months for obtaining new Wine Club members.

The last major element of ADV's projected income, Store Sales, has consistently exceeded projections by $2,549 in June, $629 in July, and $6,745 in August. This bodes well for projected increased in Wine Club membership, as ADV obtains a substantial number of new Wine Club members from visitors to ADV's Winery Property and store.

## III.

## DISCUSSION

The decision of whether to grant a request to extend or shorten the exclusivity periods lies within the sound discretion of the bankruptcy judge. In re Gibson & Cushman Dredging Corp., 101 B.R. 405, 409 (E.D.N.Y. 1989). The "cause" standard referred to in Section 1121 has been referred to as a general standard that allows the bankruptcy court "maximum flexibility to suit various types of reorganization proceedings." In re Public Service Company of New Hampshire, 88 B.R. 521, 534 (Bankr. D.N.H. 1988). As noted by the Bank, "a transcendent consideration is whether adjustment of exclusivity will facilitate moving the case forward toward a fair and equitable resolution," In re Henry Mayo Newhall Memorial Hosp., 282 B.R. 444, 445 (9th Cir. BAP 2002), and courts may consider the following factors in determining whether cause exists to extend exclusivity periods:

1. the size and complexity of the case;

2. the necessity of sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;

3. the existence of good faith progress toward reorganization;

4. the fact that the debtor is paying its bills as they become due;

5. whether the debtor has demonstrated reasonable prospects for filing a viable plan;

6. whether the debtor has made progress in negotiations with its creditors;

7. the amount of time which has elapsed in the case;

8. whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

9. whether an unresolved contingency exists.

In consideration of the foregoing overarching principles and factors, there is good cause to grant the Motion. The Debtors' cases themselves are not overly large and complex. However, the MacAdams have had to simultaneously deal with compliance, first day motion, and other issues in both cases.

ADV has opened discussions with the Bank and WFIC regarding potential terms for a plan of reorganization and the means of effectuating such plan. ADV's circumstances were materially impacted by the recent foreclosure on the Vineyard Property by the Bank (which resulted in a substantial windfall of approximately $2.4 million to the Bank) and the resulting changes to ADV's income and expenses. It would have been fruitless for ADV to discuss potential terms for a plan with the Bank before the foreclosure sale, because prior to the sale, ADV was not sure if a party interested in working with ADV or the Bank would ultimately take possession of the Vineyard Property. Also, ADV only recently came into contact with WFIC. ADV needs additional time to understand the ramifications of the disposition of the Vineyard Property, to prepare updated financial projections to provide to WFIC to enable WFIC to complete its due diligence and continue negotiations with ADV and/or to include with a disclosure statement.

As discussed above, ADV will be current on all of its post-petition tax obligations by the end of October 2009. ADV also desires to bring its equipment lessors (including Prospero Winery, Leaf Financial, and Pentech Financial[6]) post-petition current as additional cash becomes available. The Bank has objected to such payments in regard to at least one lessor – Prospero Winery. Notwithstanding the foregoing, ADV intends to negotiate with equipment lessors to resolve issues over post-petition obligations.

The discussion above regarding ADV's efforts to recover Wine Club members and revenue, the attached revised projections, and recent discussions with WFIC indicate both that ADV is making good faith progress towards reorganization and that there is a reasonable prospect that ADV will file a viable plan. ADV needs some additional time to provide financial information to WFIC, to negotiate regarding a potential investment in ADV by WFIC, to fully understand the impact of the disposition of the Vineyard Property, and to analyze all claims from general unsecured and governmental creditors. Only once these processes are complete, will ADV be in a position to prepare and file a plan.

---

[6] Key Financial should not be included in this group, because Key Financial is not a lessor, rather, Key Financial is the holder of a pre-petition claim against ADV.

Less than 5 months have elapsed since ADV's case was filed, and less than 4 months have passed since the MacAdams, whose case is being jointly administered with ADV's case and who may file a joint plan with ADV, filed their bankruptcy case. In consideration of the recent material change in circumstances resulting from the disposition of the Vineyard Property and the fact that the claims bar date for governmental claims had not yet passed in ADV's case and no claims bar dates in the MacAdams' case have yet passed, this is not a long period of time.

As discussed in the Motion, ADV's request to extend exclusivity is being made in good faith and not for the purpose of pressuring creditors into acceding to certain plan terms. On the contrary, ADV's goal is to maximize distributions to all creditors pursuant to a plan. ADV is working towards this goal by preparing revised financials and continuing negotiations with WFIC.

Finally, at the time the Motion was filed a large contingency existed – the identification of the ultimate purchaser of the Vineyard Property at the Bank's foreclosure sale and whether purchaser would be the Bank or some other party interested in working with, or investing in, ADV. Unresolved contingencies still exist. Most importantly, ADV does not yet know whether or not WFIC is interested in pursuing an investment in ADV or whether ADV will have to seek to reorganize on its own. As discussed, ADV intends to provide WFIC with amended projections and to continue discussions with WFIC during the week of October 2, 2009. By mid-October 2009, ADV should have a good idea as to how it is going to proceed. The primary terms of ADV's plan hinge on whether ADV is going to seek to reorganize on its own or with an investment from WFIC (or some other investor). It would be harmful to creditors to force ADV to incur fees and expenses to prepare a disclosure statement and plan without a definite understanding as to the terms of its plan and the means of implementing it merely to stay ahead of competing plans.

# IV.

## CONCLUSION

In consideration of all of the foregoing and the discussion in the Motion, ADV submits that good cause exists to grant ADV a short extension to November 30, 2009 to file a plan and to January 29, 2010 to obtain acceptance of a plan.

Dated: September 30, 2009

AGUA DULCE VINEYARDS, LLC,
a California limited liability company

CATHERINE P. MACADAM and
DONAL J. MACADAM

By: _/s/ Todd M. Arnold_
      MARTIN J. BRILL
      TODD M. ARNOLD
      LEVENE, NEALE, BENDER, RANKIN
        & BRILL L.L.P.
      Attorneys for Debtors and
      Debtors in Possession

# DECLARATION OF CATHERINE P. MACADAM

I, CATHERINE P. MACADAM, hereby declare as follows:

1. I am over 18 years of age. I have personal knowledge of the facts set forth below and, if called to testify, I would and could competently testify thereto.

2. I make this Declaration in support of the Reply to which this Declaration is attached. Unless otherwise stated, all capitalized terms herein have the same meanings as in the Reply.

3. I am the Manager of Sweetwater Vineyards, LLC, which is the Manager of ADV.

4. In early September 2009, I came into contact with W/F Investment Corp. ("WFIC") regarding a potential investment by WFIC in ADV. Since that time, I have met with representatives of WFIC regarding terms for an investment by WFIC. I have provided WFIC with preliminary financial information, but in order for WFIC to continue its due diligence and for the parties to continue their negotiations, WFIC needs income, expense, and profit projections.

5. ADV's financial position was recently materially altered as a result of the Bank's foreclosure on the Vineyard Property on September 25, 2009. Notably, in conjunction with the Objection, the Bank asserted that the Vineyard Property was worth $3.7 million. <u>See</u> Declaration of Ben F. Tunnel in support of the Objection, at Exhibit "1," p. 2. I am informed and believe that the Bank recently foreclosed on the Vineyard Property for a credit bid of approximately $1.3 million. Accordingly, the Bank received a windfall in excess of approximately $2.4 million when it foreclosed on the Vineyard Property and is clearly not being prejudiced by any delay in ADV's formulation of a plan. Up to the time of the foreclosure, I believed that the junior lien holder on the Vineyard Property, or some other party, including WFIC, might bid on the Vineyard Property and seek to work with ADV to manage the Vineyard Property, or invest in ADV. Therefore, until the foreclosure sale was concluded, I had no factual basis to prepare amended projections which accounted for the recently changed circumstances resulting from the Bank's foreclosure on the Vineyard Property.

6.      Immediately after the September 25, 2009 foreclosure sale, I began working on updated cash flow projections and modifications to ADV's balance sheet.  Contrary to the Bank's contention, preparing the revised projections and balance sheet is not a simple task.  This is a complex task that requires thorough attention to detail in reviewing all financial records.  Preparing revised projections and balance sheets involves removing income and expenses (including, business tax, excise tax, property tax, utility, interest, insurance, payroll and payroll tax, etc. expenses) that are related to the operation of the Vineyard Property, as well as the reduced overall liability to the Bank that resulted from the foreclosure.  All of the projections and updated records must then be reviewed and vetted before being provided to potential investors, or attached to a disclosure statement.  Despite the foregoing complexities, I expect to complete ADV's revised projections, to provide WFIC with such projections, and to resume negotiations with WFIC during the week of October 5, 2009.  A copy of ADV's <u>preliminary</u> revised projections is attached hereto as Exhibit "1."  These projections were prepared based on information contained in ADV's books and records maintained in the ordinary course of ADV's business, and certain assumptions resulting from ADV's new circumstances after the Bank's foreclosure on the Vineyard Property.  These projections will be modified over the coming days before a final version of the revised projections is provided to WFIC.  It is important to note that the attached projections do not take into account any new value contribution from WFIC or any other prospective new investor.

7.      In addition to unavoidable delays in completing ADV's due diligence documentation for WFIC, which arose from the need for ADV to prepare updated cash flow projections and balance sheets, WFIC's due diligence has also been affected to some degree because the general claims bar date only recently passed August 17, 2009 and the government claims bar date will not pass until October 31, 2009.

8.      In ADV's Monthly Operating Reports (each an "MOR"), I mistakenly overstated ADV's post-petition tax obligations, due to my mistaken interpretation of what was being asked in "III. TAX LIABILITIES FOR THE REPORTING PERIOD" and its subsequent schedule and chart.  Each MOR requires the following information:

III. TAX LIABILITIES

FOR THE REPORTING PERIOD:

Gross Sales Subject to Sales Tax: _____

Total Wages Paid: _____

| | Total Post-Petition Amounts Owing | Amount Delinquent | Date Delinquent Amount Due |
|---|---|---|---|
| Federal Withholding | | | |
| State Withholding | | | |
| FICA- Employer's Share | | | |
| FICA- Employee's Share | | | |
| Federal Unemployment | | | |
| Sales and Use | | | |
| Real Property | | | |
| Other: | | | |
| TOTAL: | 0.00 | 0.00 | |

9.     I was confused by the formatting of the section title (as it is separated by a few lines) and believed that "Total Post-Petition Amounts Owing" and "Amount Delinquent" were both supposed to be cumulative, rather than solely for the relevant reporting period.  I also inadvertently (1) included the "Total Post-Petition Amounts Owing" in the "Amount Delinquent," such that there is a large amount of double counting, and (2) did not include "Sales and Use" taxes.

10.     After reconciling ADV's books and records, taking into account negotiations with taxing authorities regarding amounts owed and the dates such amounts are due, the foregoing information in the MOR for August 2009 should state the following regarding cumulative post-petition tax obligations and delinquencies:

/ / /

/ / /

/ / /

## III. TAX LIABILITIES

FOR THE REPORTING PERIOD:

Gross Sales Subject to
Sales Tax: $40,428.67

Total Wages Paid: _____

| | Total Post-Petition Amounts Owing | Amount Delinquent | Date Delinquent Amount Due |
|---|---|---|---|
| Federal Withholding | $16,825.48 | $13,058.60 | 10/30/09 |
| State Withholding | $2,726.29 | $1,944.72[7] | 10/31/09 |
| FICA- Employer's Share | N/A – Included in Federal Withholding Amount | N/A – Included in Federal Withholding Amount | N/A – Included in Federal Withholding Amount |
| FICA- Employee's Share | N/A – Included in Federal Withholding Amount | N/A – Included in Federal Withholding Amount | N/A – Included in Federal Withholding Amount |
| Federal Unemployment | N/A – Included in Federal Withholding Amount | N/A – Included in Federal Withholding Amount | N/A – Included in Federal Withholding Amount |
| Sales and Use | $2,625.56 | $2,625.56[8] | 7/30/09 |
| Real Property | $7,000.00[9] | $0 | 12/10/2009 |
| Other: | | | |
| TOTAL: | $29,177.73 | $17,628.88 | |

11. As can be seen from the preliminary revised projections attached hereto as Exhibit "1," ADV expects to have sufficient funds to bring the foregoing post-petition tax liabilities current in October 2009. Most notably, I expect that ADV will receive approximately $93,000 in payments on outstanding invoices from Blue Moon Winery and Chateau Diane in October 2009. A portion of these funds will be used to bring ADV current on the foregoing tax post-petition tax obligations.

---

[7] See Exhibit "2" hereto, a statement dated September 11, 2009 from the Employment Development Department regarding pre- and post-petition state withholding tax obligations.
[8] This is the amount owing for sales taxes from the Petition Date of May 4, 2009 through the end of the second quarter of 2009 pursuant to ADV's Sales Tax Return for the second quarter of 2009, ending on June 30, 3009, which was filed by ADV on July 30, 2009. This is the only post-petition sales tax currently owed by ADV, as the Sales Tax Return for the third quarter of 2009 and accompanying payment will not be due until October 31, 2009. ADV has informed the State Board of Equalization that the payment owing for the post-petition portion of sales taxes for the second quarter of 2009 and the third quarter of 2009 will be paid by October 31, 2009.
[9] Reduced liability based on September 25, 2009 foreclosure sale of the Vineyard Property.

17

12.     In order to ensure that ADV remains current on its post-petition federal tax obligations on a going forward basis, ADV has enrolled in the Electronic Federal Tax Payment System so that it can make automated electronic payments for federal tax obligations.

13.     Collectively attached hereto as Exhibit "3" are copies of the budget to actual comparisons of ADV's projected income and expenses as set forth in the budget attached to the cash collateral motion approved by this Court against ADV's actual performance for June through August 2009.   As can be seen, ADV projected income of $344,500 and expenses of $342,238 for the foregoing period, whereas the actual income and expenses for this period were $178,242 and $227,551.   As noted in the budget to actual comparisons, ADV is behind about 50 to 60 days in its income projections and collection of the same.   For example, in June 2009, the actual income for Bulk Wine Sales was $37,608 less than projected.   However, ADV had booked an additional $36,303 in sales in June 2009 but had not yet collected the account receivable for the sales.   In July 2009, the actual income for Bulk Wine Sales was $38,548 less than projected. However, ADV had booked an additional $54,000 in sales in July 2009 but had not yet collected the account receivable for the sales.   In August 2009, the actual income for Bulk Wine Sales was $54,000 more than expected.   In addition, ADV booked an additional $39,348 in sales in August 2009 but has not yet collected the account receivable for the sales.

14.     Another major element of ADV's projected income, Sales-Wine Club, has also lagged.   This is due in part to the credit card fiasco discussed in the Motion at ¶¶ 13-14 (i.e., the double billing of Wine Club members resulting from a computer glitch when ADV converted to a new credit card processing system which caused a loss of members and revenue when ADV had to make refunds to members and the credit card companies concurrently debited ADV's account for refunds to the same customers).   Another reason for lower than projected Wine Club revenue is due to the slow transition of Wine Club members into the more secure Verepay automated invoicing software, and the termination of ADV's ability to accept American Express cards for payment.   Prior to November 2008, approximately one-third of ADV's Wine Club members used American Express cards as the card on file to be used for their Wine Club auto invoicing.   While many of the American Express customers provided replacement Visa or

MasterCard credit cards for such auto invoicing, transitioning to new cards is time consuming and tedious. ADV is continuing to work with BCC Merchant Solutions to reconcile the double refunds to customers and to recover as much as possible from credit card companies for improper debits to make refunds to customers who had already received refunds directly from ADV. Once this reconciliation process is completed, ADV should catch-up on some of the projected Wine Club income that was not realized in June through August 2009. Likewise, Wine Club revenue should continue to increase as ADV obtains replacement credit cards for Wine Club members who previously used American Express credit cards.

15. Other major contributing factors to the discrepancy in projected and actual Wine Club income are (1) the time it is taking ADV to recover past Wine Club members that were lost as a result of the credit card processing problem, and (2) economic conditions and seasonality affecting ADV's ability to attract new Wine Club members. ADV is continuing to work to recover prior Wine Club members and obtain new Wine Club Members. These efforts have been stymied by the general economic decline and traditional low point in Wine Club membership that coincided with the filing of ADV's bankruptcy case. Fortunately, ADV has made advances on both fronts. In fact, there was a marked increase in Wine Club income between July and August 2009 ($8,543 versus $20,981, respectively). I believe that Wine Club income will continue to increase over the next few holiday months, which are traditionally the strongest months for obtaining new Wine Club members.

16. The last major element of ADV's projected income, Store Sales, has consistently exceeded projections by $2,549 in June, $629 in July, and $6,745 in August. This bodes well for projected increased in Wine Club membership, as ADV obtains a substantial number of new Wine Club members from visitors to ADV's Winery Property and store.

17. As discussed above, ADV will be current on all of its post-petition tax obligations by the end of October 2009. ADV also desires to bring its equipment lessors (including Prospero Winery, Leaf Financial, and Pentech Financial[10]) post-petition current as additional cash

---

[10] Key Financial should not be included in this group, because Key Financial is not a lessor, rather, Key Financial is the holder of a pre-petition claim against ADV.

1  becomes available. The Bank has objected to such payments in regard to at least one lessor –
2  Prospero Winery. Notwithstanding the foregoing, I intend to negotiate with equipment lessors to
3  resolve issues over post-petition obligations.

4      18.      ADV's request to extend exclusivity is being made in good faith and not for the
5  purpose of pressuring creditors into acceding to certain plan terms. On the contrary, ADV's goal
6  is to maximize distributions to all creditors pursuant to a plan. ADV is working towards this
7  goal by preparing revised financials and continuing negotiations with WFIC.

8      I declare under penalty of perjury that the foregoing is true and correct.

9      Executed this 30th day of September 2009, at Agua Dulce, California.

10

11                                CATHERINE P. MACADAM

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

20

**DRAFT AND PRELIMINARY Agua Dulce Vineyards - 12 Month Cash Flow Projection**

**Without 53 Acre Vineyard Property**

| Line | Item | Oct-09 | Nov-09 | Dec-09 | Jan-10 | Feb-10 | Mar-10 | Apr-10 | May-10 | Jun-10 | Jul-10 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | **Beginning Cash Balance** | $2,800 | | | | | | | | | |
| | **Sources of Cash** | | | | | | | | | | |
| S-1 | Sales-Wine Club | $ 22,000 | $ 33,000 | $ 40,000 | $ 30,000 | $ 37,000 | $ 37,000 | $ 37,000 | $ 47,000 | $ 44,000 | $ 45,000 |
| S-2 | Sales-Store | $ 45,000 | $ 52,500 | $ 70,000 | $ 30,000 | $ 37,500 | $ 30,000 | $ 30,000 | $ 45,000 | $ 35,000 | $ 37,000 |
| S-4 | Bulk Wine Sales (net of commission) | $ 93,854 | $ - | $ 25,000 | $ 6,000 | $ 37,500 | $ 25,000 | $ 45,000 | $ 35,000 | $ 30,000 | $ 20,000 |
| | **Total Sources** | $ 160,854 | $ 85,500 | $ 135,000 | $ 66,000 | $ 112,000 | $ 92,000 | $ 112,000 | $ 127,000 | $ 109,000 | $ 102,000 |
| | **Uses of Cash** | | | | | | | | | | |
| S-5 | Payroll-Store & Admin. Including Taxes | $ 24,734 | $ 25,234 | $ 26,234 | $ 24,734 | $ 25,234 | $ 26,234 | $ 24,734 | $ 25,234 | $ 26,234 | $ 24,734 |
| S-6 | Payroll-Agricultural - Including Taxes | $ 9,279 | $ 9,279 | $ 9,279 | $ 9,279 | $ 9,279 | $ 9,279 | $ 9,279 | $ 9,279 | $ 9,279 | $ 9,279 |
| S-9 | State Board of Equal - Sales Tax | $ 2,625 | $ 5,985 | $ 7,700 | $ 4,200 | $ 5,215 | $ 4,690 | $ 4,690 | $ 6,440 | $ 5,530 | $ 5,740 |
| S-10 | Excise Tax | $ 1,200 | $ - | $ - | $ 1,200 | $ - | $ - | $ 1,200 | $ - | $ - | $ 1,200 |
| | Post Petition state and Fed payroll taxes due | $ 22,178 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| S-12 | Real Property Taxes | $ - | $ - | $ 7,100 | $ - | $ - | $ - | $ 7,100 | $ - | $ - | $ - |
| S-14 | Bankruptcy Counsel | $ 10,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 7,000 | $ 5,000 | $ 4,000 | $ 2,000 | $ 3,500 | $ 5,000 |
| S-15 | Other Professionals, Accounting, Winemaker, etc. | $ 2,500 | $ 1,400 | $ - | $ 1,400 | $ - | $ 1,400 | $ - | $ 1,400 | $ - | $ 1,400 |
| S-16 | US Trustee quarterly Fee. | $ 925 | $ - | $ - | $ 925 | $ - | $ - | $ 925 | $ - | $ - | $ 925 |
| S-17 | Advertising | $ 7,500 | $ 15,000 | $ 15,000 | $ 2,500 | $ 4,500 | $ 2,500 | $ 7,000 | $ 7,500 | $ 5,000 | $ 5,500 |
| S-18 | Miscellaneous 1% | $ 1,609 | $ 855 | $ 1,350 | $ 660 | $ 1,120 | $ 920 | $ 1,120 | $ 1,270 | $ 1,090 | $ 1,020 |
| S-19 | Operating Expenses-Agricultural | $ 450 | $ 600 | $ 600 | $ 700 | $ 700 | $ 700 | $ 700 | $ 700 | $ 700 | $ 700 |
| S-20 | Operating Expenses-Cellar | $ 1,650 | $ 450 | $ 450 | $ 600 | $ 600 | $ 600 | $ 600 | $ 600 | $ 600 | $ 600 |
| S-21 | Operating Expenses-Store and Admin. | $ 7,500 | $ 8,200 | $ 7,500 | $ 7,500 | $ 8,200 | $ 7,500 | $ 7,500 | $ 8,200 | $ 7,500 | $ 7,500 |
| S-22 | Deduction for Credit Card Fees @3.50% | $ 2,345 | $ 2,993 | $ 3,850 | $ 2,100 | $ 2,608 | $ 2,345 | $ 2,345 | $ 3,220 | $ 2,765 | $ 2,870 |
| S-25 | Utilities - Edison | $ 1,400 | $ 1,400 | $ 750 | $ 1,000 | $ 750 | $ 750 | $ 750 | $ 750 | $ 750 | $ 3,500 |
| S-26 | Utilities - Gas Co | $ 120 | $ 350 | $ 350 | $ 120 | $ 350 | $ 350 | $ 120 | $ 350 | $ 350 | $ 120 |
| S-27 | Utilities - Phones | $ 1,257 | $ 900 | $ 900 | $ 900 | $ 900 | $ 900 | $ 900 | $ 900 | $ 900 | $ 900 |
| S-28 | Supplies - Store and Admin | $ 350 | $ 1,350 | $ 600 | $ 350 | $ 750 | $ 350 | $ 500 | $ 350 | $ 600 | $ 350 |
| S-29 | Supplies - Agricultural & Cellar | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 |
| S-30 | Freight | $ 760 | $ 6,700 | $ 2,700 | $ 750 | $ 750 | $ 750 | $ 750 | $ 750 | $ 750 | $ 750 |
| S-31 | Inventory Purchases (holiday) | $ 3,200 | $ 3,200 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| S-32 | Lease & Equipmt Payments | $ 7,304 | $ 7,304 | $ 7,304 | $ 7,304 | $ 7,304 | $ 7,304 | $ 7,304 | $ 7,304 | $ 7,304 | $ 7,304 |
| | **Total Uses** | $ 109,406 | $ 96,700 | $ 97,167 | $ 71,722 | $ 75,760 | $ 72,072 | $ 82,017 | $ 76,747 | $ 73,552 | $ 79,892 |
| | **Net Cash Flow** | $ 51,448 | $ (11,200) | $ 37,833 | $ (5,722) | $ 36,241 | $ 19,928 | $ 29,983 | $ 50,263 | $ 35,648 | $ 22,108 |
| | **Ending Cash** | $ 54,248 | $ 43,049 | $ 80,882 | $ 75,160 | $ 111,400 | $ 131,328 | $ 161,311 | $ 211,564 | $ 247,212 | $ 269,320 |

**DRAFT AND PRELIMINARY Agua Dulce Vineyards - 12 Mc..**

**Without 53 Acre Vineyard Property**

| Line Item | | Aug-10 | Sep-10 | TOTAL |
|---|---|---|---|---|
| | **Beginning Cash Balance** | **$2,800** | | |
| | **Sources of Cash** | | | |
| S-1 | Sales-Wine Club | $ 47,000 | $ 49,000 | $ 468,000 |
| S-2 | Sales-Store | $ 35,000 | $ 35,000 | $ 482,000 |
| S-4 | Bulk Wine Sales (net of commission) | $ 35,000 | $ 35,000 | $ 387,354 |
| | | | | $ - |
| | **Total Sources** | **$ 117,000** | **$ 119,000** | **$ 1,337,354** |
| | | | | |
| | **Uses of Cash** | | | $ - |
| S-5 | Payroll-Store & Admin. Including Taxes | $ 25,234 | $ 26,234 | $ 304,808 |
| S-6 | Payroll-Agricultural - Including Taxes | $ 9,279 | $ 9,279 | $ 111,348 |
| S-9 | State Board of Equal - Sales Tax | $ 5,740 | $ 5,880 | $ 64,435 |
| S-10 | Excise Tax | $ - | $ - | $ 4,800 |
| | Post Petition state and Fed payroll taxes due | $ - | $ - | $ 22,178 |
| S-12 | Real Property Taxes | $ - | $ - | $ 14,200 |
| S-14 | Bankruptcy Counsel | $ 3,500 | $ 5,000 | $ 60,000 |
| S-15 | Other Professionals, Accounting, Winemaker, etc | $ - | $ 2,500 | $ 12,000 |
| S-16 | US Trustee quarterly Fee; | $ - | $ - | $ 3,700 |
| S-17 | Advertising | $ 5,500 | $ 7,000 | $ 84,500 |
| S-18 | Miscellaneous 1% | $ 1,170 | $ 1,190 | $ 13,374 |
| S-19 | Operating Expenses-Agricultural | $ 700 | $ 700 | $ 7,950 |
| S-20 | Operating Expenses-Cellar | $ 600 | $ 600 | $ 7,950 |
| S-21 | Operating Expenses-Store and Admin. | $ 8,200 | $ 7,500 | $ 92,800 |
| S-22 | Deduction for Credit Card Fees @3.50% | $ 2,870 | $ 2,940 | $ 33,250 |
| S-25 | Utilities- Edison | $ 4,000 | $ 1,000 | $ 16,800 |
| S-26 | Utilities - Gas Co | $ 350 | $ 350 | $ 3,280 |
| S-27 | Utilities - Phones | $ 900 | $ 900 | $ 11,157 |
| S-28 | Supplies - Store and Admin | $ 750 | $ 350 | $ 6,650 |
| S-29 | Supplies - Agricultural & Cellar | $ 500 | $ 500 | $ 6,000 |
| S-30 | Freight | $ 750 | $ 750 | $ 16,930 |
| S-31 | Inventory Purchases (holiday) | $ - | $ - | $ 6,400 |
| S-32 | Lease & Equipmt Payments | $ 7,304 | $ 7,304 | $ 87,648 |
| | **Total Uses** | **$ 77,347** | **$ 79,977** | **$ 992,158** |
| | | | | |
| | **Net Cash Flow** | **$ 39,653** | **$ 39,023** | **$ 345,196** |
| | **Ending Cash** | **$ 308,973** | **$ 347,996** | |

**EDD** Serving the People of California

DE 2176 EMPLOYER ACCOUNT STATEMENT
SEND STATEMENT INQUIRIES TO:
EMPLOYMENT DEVELOPMENT DEPARTMENT
P.O. BOX 826880    MIC 92E
SACRAMENTO, CA 94280-0001

OR CALL: (916) 464-2888

5152968320909110000028811178

| DEPARTMENT USE ONLY | | TOTAL AMOUNT DUE (PAY THIS AMOUNT) |
|---|---|---|
| | | **$28,811.78** |
| ACCOUNT NUMBER | STATEMENT DATE | CLOSING DATE |
| 515-2968-3 | 09/11/09 | 08/27/09 |

AGUA DULCE VINEYARDS LLC
C/O CPE
9640 SIERRA HWY
AGUA DULCE        CA 91390-4622

EMPLOYMENT DEVELOPMENT DEPT.
PO BOX 826846
SACRAMENTO        CA 94246-0001

0614

DE 2176 Rev. 4 (8-98)          21760898

Detach and Return This Portion With Payment
Make Remittances Payable to EDD and Send to the Above Address:
Include Account Number on All Checks and Inquiries

TEAR ON PERFORATED LINE

KEEP THIS PORTION FOR YOUR RECORDS

| PAGE 1 | Account Number | 515-2968-3 | Statement Date | 09/11/09 |
|---|---|---|---|---|
| See Last Page For Account Summary | | | Closing Date | 08/27/09 |

ALL SECTION NUMBERS REFER TO THE CALIFORNIA UNEMPLOYMENT INSURANCE CODE UNLESS OTHERWISE NOTED

## NOTICE OF AMOUNT DUE

Explanation: UNPAID CONTRIBUTIONS/TAXES WERE REPORTED. PURSUANT TO SECTION 1112, A 10% PENALTY, PLUS INTEREST, IS NOW DUE.

Period Ended: MARCH 31, 2009

|  | Taxable wages | Rates | Contributions/Tax |
|---|---|---|---|
| 1. UI: | $68,067.00 | 4.900% | $3,335.28 |
| 2. ETT: | $68,067.00 | 0.1000% | $68.06 |
| 3. DI: | $94,416.00 | 1.1000% | $1,038.57 |
| 4. PIT: | | | $1,018.13 |

```
5. Total Tax is (Lines 1+2+3+4) --------------------                    $5,460.04
6. You Paid With Quarterly Return --------------------     $0.00
7. You Paid With Monthly/Eighth Monthly Deposit ------     $0.00
8. Other Credits / Liabilities billed or assessed ----     $0.00
9. Total Paid (Lines 6+7+8) --------------------------                     $0.00
10. Taxes Due (Line 5 - Line 9) ----------------------                 $5,460.04
11. Penalty ------------------------------------------                   $546.00
12. Other Costs --------------------------------------                     $0.00
```

**Net Amount Due**        **$6,006.04**

## FOR ADDITIONAL INFORMATION ABOUT THIS STATEMENT - SEE REVERSE

DE 2176 Rev. 4 (8-98)  Employer Account Statement    State of California / Employment Development Department        CU-PA178

EXHIBIT 2

# NOTICE OF AMOUNT DUE

Explanation: UNPAID CONTRIBUTIONS/TAXES WERE REPORTED. PURSUANT TO SECTION 1112, A 10% PENALTY, PLUS INTEREST, IS NOW DUE.

Period Ended: JUNE 30, 2009

|  | Taxable wages | Rates | Contributions/Tax |  |  |
|---|---|---|---|---|---|
| 1. UI: | $16,288.00 | 4.900% | $798.11 | | |
| 2. ETT: | $16,288.00 | 0.1000% | $16.28 | | |
| 3. DI: | $69,837.00 | 1.1000% | $768.20 | | |
| 4. PIT: | | | $880.63 | | |

```
5. Total Tax is (Lines 1+2+3+4) ----------------------          $2,463.22
6. You Paid With Quarterly Return --------------------  $0.00
7. You Paid With Monthly/Eighth Monthly Deposit ------  $0.00
8. Other Credits / Liabilities billed or assessed ---- $0.00
9. Total Paid (Lines 6+7+8) ---------------------------            $0.00
10. Taxes Due (Line 5 - Line 9) ----------------------        $2,463.22
11. Penalty ------------------------------------------          $246.32
12. Other Costs --------------------------------------            $0.00
```

### Net Amount Due          $2,709.54

# NOTICE OF AMOUNT DUE

Explanation: UNPAID CONTRIBUTIONS/TAXES WERE REPORTED. PURSUANT TO SECTION 1112, A 10% PENALTY, PLUS INTEREST, IS NOW DUE.

Period Ended: JUNE 30, 2009

|  | Taxable wages | Rates | Contributions/Tax |  |  |
|---|---|---|---|---|---|
| 1. UI: | $9,715.00 | 4.900% | $476.03 | | |
| 2. ETT: | $9,715.00 | 0.1000% | $9.71 | | |
| 3. DI: | $41,657.00 | 1.1000% | $458.22 | | |
| 4. PIT: | | | $525.29 | | |

```
5. Total Tax is (Lines 1+2+3+4) ----------------------          $1,469.25
6. You Paid With Quarterly Return --------------------  $0.00
7. You Paid With Monthly/Eighth Monthly Deposit ------  $0.00
8. Other Credits / Liabilities billed or assessed ---- $0.00
9. Total Paid (Lines 6+7+8) ---------------------------            $0.00
10. Taxes Due (Line 5 - Line 9) ----------------------        $1,469.25
11. Penalty ------------------------------------------          $146.93
12. Other Costs --------------------------------------            $0.00
```

### Net Amount Due          $1,616.18

# ACCOUNT SUMMARY

Prior Statement Date 07/31/09

```
1. Prior Statement Balance ------------------                      $18,234.29
2. Payments and/or Other Credits ------------     $0.00
3. DE938 ADJUSTMENTS ----------------------       $0.00
4. DE938P ADJUSTMENTS ---------------------       $0.00
5. Other Adjustments ----------------------       $0.00
```

**6. Sub Total ----------------------------**                        **$0.00**

**7. Amounts Unpaid ------------------**                         **$18,234.29**

```
8. Amounts Assessed this Statement ----------                      $0.00
9. Amounts Billed this Statement ------------                 $10,331.76
10. Interest  (through 09/14/09) -------------                    $245.73
```

**Total Amount Due ---------------**                           **$28,811.78**

Daily Interest:    $3.94
(add or deduct the daily interest amount for each day
you pay before or after the interest through date)

COLLECTION ON YOUR ACCOUNT IS TEMPORARILY SUSPENDED FOR THE BALANCE DUE PRIOR TO THE DATE OF YOUR
BANKRUPTCY PETITION. PURSUANT TO THE BANKRUPTCY CODE, SECTION 362, NO ACTION WILL BE TAKEN ON THIS
PRIOR BALANCE WHILE THE AUTOMATIC STAY IS IN EFFECT, HOWEVER, YOU ARE STILL REQUIRED TO FILE ALL
RETURNS TIMELY AND PAY ALL TAXES THAT BECOME DUE FOR ALL PERIODS SUBSEQUENT TO THE FILING OF YOUR
BANKRUPTCY PETITION.

SOME OR ALL OF THE TOTAL AMOUNT DUE ON THIS STATEMENT INCLUDES LIABILITIES FOR PERIODS AFTER YOUR
BANKRUPTCY PETITION DATE. FAILURE TO PAY THESE LIABILITIES MAY RESULT IN INVOLUNTARY CONVERSION OR
DISMISSAL OF YOUR BANKRUPTCY.

To determine the post petition balance, deduct this amount .....$26,085.49
from the total amount due. If you have any questions regarding the balance due call (916) 464-2888.

**FOR ADDITIONAL INFORMATION ABOUT THIS STATEMENT SEE BACK OF PAGE 1**

| Line | Item | 1-Jun | 8-Jun | 15-Jun | 22-Jun | 29-Jun | TOTAL JUNE BUDGET | TOTAL JUNE ACTUAL | DIFF | NOTES |
|---|---|---|---|---|---|---|---|---|---|---|
| | **Beginning Cash Balance** | | | | | | | | | |
| | **Sources of Cash** | | | | | | | | | |
| | Sales-Wine Club | | | | | | | | | Biggest obstacles in getting the wine club revenues where they need to be are 1) Many qualified customers who are sent over to Vinepary for processing are not processing, (even though they are qualified and would normally go through)  due to changes in customer information since signing up for wine club and ADV using Vinepary, i.e having current |
| S-1 | Sales-Store | $ 35,000 | $ 2,500 | $ 4,500 | $ 2,500 | $ 1,000 | $ 45,500 | 13,833 | (31,667) | customer  zip code, house number  2) ADV properly capturing those customers to be |
| S-2 | Sales-Wine Adventures-In Home Parties. | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 6,000 | $ 22,000 | 24,549 | 2,549 | rang, and getting them to vinepay, or processing them in house if they are custom |
| S-3 | | $ - | $ 500 | $ - | $ 500 | $ 1,500 | $ 2,500 | - | (2,500) | SOLUTIONS TO WINE CLUB:  ADV currently reconciling PIMS "Active Wine club" members into a file for Vinepary.  Also, updating customer's address etc.  When they are at ADV. |
| S-4 | Bulk Wine Sales (net of commission) | $ - | $ 7,500 | $ 55,000 | $ - | $ - | $ 62,500 | 24,892 | (37,608) | Booked an Additional $36,303 in sales which are not included in June revenues b/c they have not been received. |
| | **Total Sources** | $ 39,000 | $ 14,500 | $ 63,500 | $ 7,000 | $ 8,500 | $ 132,500 | 63,275 | (69,225) | |
| | | | | | | | **TOTAL JUNE BUDGET** | **Total Actual USE** | **DIFF** | |
| | **Uses of Cash** | | | | | | | | | |
| S-5 | Payroll Store & Admin  Including Taxes | $ - | $ 10,177 | $ - | $ 10,177 | $ - | $ 20,354 | 16,932 | 3,422 | |
| S-6 | Payroll-Agricultural - Including Taxes | $ - | $ 10,186 | $ - | $ 10,186 | $ - | $ 20,373 | 18,331 | 2,042 | |
| S-7 | Payroll Taxes-Past Due | $ - | 1,500 | $ - | $ - | $ - | $ 1,500 | - | 1,500 | |
| S-8 | Pre-petition wages per Court Order | $ - | $ - | $ - | $ - | $ - | $ - | - | - | |
| S-9 | State Board of Equal - Sales Tax | $ 370 | $ 416 | $ 370 | $ 416 | $ 694 | $ 2,266 | - | 2,266 | |
| S-10 | Excise  Tax | $ 900 | $ - | $ - | $ - | $ - | $ 900 | - | 900 | |
| | Franchise Tax Board - LLC  Fees, Payment | | | | | | | | | |
| S-11 | Program ($17,733.41) | $ - | $ 2,956 | $ - | $ - | $ - | $ 2,956 | - | 2,956 | |
| S-12 | Retail Property Taxes | $ - | $ - | $ - | $ - | $ - | $ - | - | - | |
| S-13 | Post Bankruptcy Utility Deposits | $ - | $ - | $ - | $ - | $ - | $ - | - | - | |
| S-14 | Bankruptcy Counsel | $ - | $ 5,000 | $ 20,000 | $ - | $ - | $ 25,000 | 5,000 | 20,000 | |
| | Other Professionals, Accounting, Winemaker, | | | | | | | | | |
| S-15 | etc. | $ 4,400 | $ 1,500 | $ 1,400 | $ 1,600 | $ 2,900 | $ 11,800 | 10,299 | 1,501 | |
| S-16 | US Trustee quarterly Fee, Jul 15 Oct 15 | $ - | $ - | $ - | $ - | $ - | $ - | - | - | |
| S-17 | Advertising | $ 2,500 | $ 2,500 | $ 2,500 | $ - | $ 2,500 | $ 10,000 | 7,750 | 2,250 | |
| S-18 | Miscellaneous 2% | $ 780 | $ 290 | $ 1,270 | $ 140 | $ 170 | $ 2,650 | 2,639 | 11 | |
| S-19 | Operatory Expenses-Agricultural | $ 150 | $ 150 | $ - | $ 300 | $ 150 | $ 750 | 722 | 28 | |
| S-20 | Operating Expenses-Cellar | $ 1,650 | $ - | $ - | $ 150 | $ - | $ 1,800 | 2,534 | (734) | |
| S-21 | Operating Expenses-Store and Admin | $ 2,600 | $ 375 | $ 6,122 | $ 750 | $ 1,100 | $ 10,947 | 10,743 | 204 | |
| S-22 | Deduction for Credit Card Fees @3.50% | $ 1,365 | $ 228 | $ 288 | $ 228 | $ 245 | $ 2,354 | 859 | 1,505 | |
| S-23 | Commission-Wine Adventures @ 25% | $ - | $ 125 | $ - | $ 125 | $ 375 | $ 625 | - | 625 | |
| S-24 | Utilities - Edison | $ 6,640 | $ - | $ 3,200 | $ - | $ - | $ 6,640 | 6,212 | 428 | |
| S-25 | Utilities - Gas Co | $ - | $ - | $ 120 | $ - | $ - | $ 3,200 | 2,838 | 362 | |
| S-26 | Utilities - Phones | $ 1,257 | $ 275 | $ - | $ - | $ - | $ 120 | 120 | - | |
| S-27 | Supplies - Store and Admin | $ - | $ - | $ 550 | $ - | $ - | $ 1,257 | 128 | 1,129 | |
| S-28 | Supplies - Agricultural & Cellar | $ 500 | $ - | $ - | $ - | $ - | $ 825 | 728 | 97 | |
| S-29 | Freight | $ 400 | $ 120 | $ 120 | $ 120 | $ 400 | $ 500 | 490 | 10 | |
| S-30 | Inventory Purchases (holiday) | $ - | $ - | $ - | $ - | $ - | $ 1,160 | 1,050 | 110 | |
| S-31 | Lease & Euipmt Payments | $ - | $ - | $ 1,000 | $ - | $ - | $ 1,000 | 2,500 | (1,500) | |
| | **Total Uses** | $ 23,512 | $ 35,798 | $ 36,850 | $ 24,193 | $ 8,554 | $ 128,387 | 89,766 | 39,231 | |

# Agua Dulce Vineyards -BUDGET TO ACTUAL- July 1, - July 31 2009

| Line Item | Beginning Cash Balance / Sources of Cash | TOTAL JULY BUDGET | TOTAL JULY ACTUAL | DIFF | NOTES |
|---|---|---|---|---|---|
| | **Sources of Cash** | | | | |
| S-1 | Sales-Wine Club | $ 44,000 | $ 8,543 | $ (35,457) | SOLUTIONS TO WINE CLUB. ADV continuing its reconciliation of the PMS "Active Wine club" members into a file for Veerpay. Also, updating customer's address etc.. ADV expects a "catch'up" of these wine club revenues over coming months. |
| S-2 | Sales-Store | $ 28,000 | $ 28,629 | $ 629 | |
| S-3 | Sales-Wine Adventures-In Home Parties | $ 6,000 | $ - | $ (6,000) | |
| S-4 | Bulk Wine Sales (net of commission) | $ 55,000 | $ 16,452 | $ (38,548) | In August 2009, ADV Booked an Additional $54,000 in bulk wine sales. |
| | **Total Sources** | $ 133,000 | $ 53,624 | $ (79,376) | |
| | **Uses of Cash** | **BUDGET JULY** | **ACTUAL JULY** | **DIFF** | |
| S-5 | Payroll-Store & Admin. Net Pay | $ 23,234 | $ 18,894 | $ 4,340 | This is a five week pay period |
| S-6 | Payroll-Agricultural - Net Pay | $ 20,373 | $ 21,502 | $ (1,129) | This is a five week pay period |
| S-7 | Payroll Taxes-Past Due | $ 1,500 | $ - | $ 1,500 | |
| S-8 | Pre-petition wages per Court Order | | | | |
| S-9 | State Board of Equal - Sales Tax | $ 6,660 | $ - | $ 6,660 | |
| S-10 | Excise Tax | | | | |
| S-11 | Franchise Tax Board - LLC Fees, Payment Program | $ 2,956 | $ - | $ 2,956 | |
| S-12 | Real Property taxes | | | | |
| S-13 | Post Bankruptcy Utility Deposits | $ - | | - | |
| S-14 | Bankruptcy Counsel | $ 10,000 | $ 2,000 | $ 8,000 | |
| S-15 | Other Professionals, Accounting, Winemaker, etc | $ 2,500 | $ 2,500 | - | |
| S-16 | US Trustee quarterly Fee: Jul 15 Oct 15 | $ 1,950 | $ 975 | 975 | |
| S-17 | Advertising | $ 5,000 | $ 4,665 | 335 | |
| S-18 | Miscellaneous 2% | $ 2,660 | $ 2,502 | 158 | |
| S-19 | Operating Expenses-Agricultural | $ 700 | $ 749 | (49) | |
| S-20 | Operating Expenses-Cellar | $ - | $ - | - | |
| S-21 | Operating Expenses-Store and Admin | $ 10,950 | $ 10,913 | 37 | |
| S-22 | Deduction for Credit Card Fees @3.50% | $ 2,520 | $ 931 | 1,589 | |
| S-23 | Commission-Wine Adventures @ 25% | $ 1,500 | $ 242 | 1,258 | |
| S-24 | Utility Deposit | $ - | $ - | - | |
| S-25 | Utilities - Edison | $ 5,800 | $ 5,925 | (125) | |
| S-26 | Utilities - Gas Co | $ 120 | $ - | 120 | |
| S-27 | Utilities - Phones | $ 1,257 | $ 1,344 | (87) | |
| S-28 | Supplies - Store and Admin | $ 275 | $ 220 | 55 | |
| S-29 | Supplies - Agricultural & Cellar | $ 500 | $ 247 | 253 | |
| S-30 | Freight | $ 480 | $ 550 | (70) | |
| S-31 | Inventory Purchases (holiday) | $ 3,500 | $ 2,899 | 601 | |
| S-32 | Lease & Equipmt Payments | $ 7,304 | $ - | 7,304 | |
| | **Total Uses** | $ 111,739 | $ 77,059 | $ 34,680 | |

# Agua Dulce Vineyards - BUDGET TO ACTUAL - Aug 1 - Aug 31 2009

| Line Item | Sources of Cash | TOTAL AUGUST BUDGET | TOTAL AUGUST ACTUAL | DIFF | NOTES |
|---|---|---|---|---|---|
| | Beginning Cash Balance | | | | |
| | | | | | |
| S-1 | Sales-Wine Club | $ 55,000 | $ 20,981 | $ (34,019) | Wine Club revenues continue to increase in August. |
| S-2 | Sales-Store | $ 18,000 | $ 24,745 | $ 6,745 | Store traffic incrased and new wine club memberships are included herein. |
| S-3 | Sales-Wine Adventures-In Home Parties. | $ 6,000 | $ - | $ (6,000) | |
| | | | | | |
| S-4 | Bulk Wine Sales (net of commission) | $ - | $ 54,000 | $ 54,000 | In Sept 2009, ADV Booked an additional $39,348 in bulk wine sales. |
| | | | | | |
| | **Total Sources** | $ 79,000 | $ 99,726 | $ 20,726 | |
| | | | | | |
| | | TOTAL AUGUST BUDGET | TOTAL AUGUST ACTUAL | DIFF | |
| | Uses of Cash | | | | |
| S-5 | Payroll-Store & Admin. Net Pay | $ 23,234 | $ 15,304 | $ 7,930 | |
| S-6 | Payroll-Agricultural - Net Pay | $ 25,373 | $ 20,936 | $ 4,437 | |
| S-7 | Payroll Taxes-Past Due | $ 1,500 | $ - | $ 1,500 | |
| S-8 | Pre-petition wages per Court Order | $ - | $ - | $ - | |
| S-9 | State Board of Equal - Sales Tax | $ 6,753 | $ - | $ 6,753 | |
| S-10 | Excise Tax | $ - | $ - | $ - | |
| S-11 | Franchise Tax Board - LLC Fees; Payment Progra | $ 2,956 | $ - | $ 2,956 | |
| S-12 | Real Property Taxes | $ - | $ - | $ - | |
| S-13 | Post Bankruptcy Utility Deposits | $ - | $ - | $ - | |
| S-14 | Bankruptcy Counsel | $ - | $ 2,000 | $ (2,000) | |
| S-15 | Other Professionals, Accounting, Winemaker, etc | $ 4,900 | $ 4,900 | $ - | |
| S-16 | US Trustee quarterly Fee; Jul 15 Oct 15 | $ - | $ - | $ - | |
| S-17 | Advertising | $ - | $ 925 | $ (925) | |
| S-18 | Miscellaneous 2% | $ 1,580 | $ 1,653 | $ (73) | |
| S-19 | Operating Expenses-Agricultural | $ 1,250 | $ 881 | $ 369 | |
| S-20 | Operating Expenses-Cellar | $ 1,650 | $ 1,512 | $ 138 | |
| S-21 | Operating Expenses-Store and Admin. | $ 10,950 | $ 8,518 | $ 2,432 | |
| S-22 | Deduction for Credit Card Fees @3.50% | $ 2,555 | $ 304 | $ 2,251 | |
| S-23 | Commission-Wine Adventures @ 25% | $ 1,500 | $ 1,500 | $ - | |
| S-24 | Utility Deposit | $ - | $ - | $ - | |
| S-25 | Utilities- Edison | $ 7,000 | $ - | $ 7,000 | |
| S-26 | Utilities - Gas Co | $ 120 | $ 234 | $ (114) | |
| S-27 | Utilities - Phones | $ 1,257 | $ 1,160 | $ 97 | |
| S-28 | Supplies - Store and Admin | $ 350 | $ - | $ 350 | |
| S-29 | Supplies - Agricultural & Cellar | $ 500 | $ 100 | $ 400 | |
| S-30 | Freight | $ 780 | $ 810 | $ (30) | |
| S-31 | Inventory Purchases (holiday) | $ - | $ - | $ - | |
| S-32 | Lease & Equipmt Payments | $ 7,304 | $ - | $ 7,304 | |
| | **Total Uses** | $ 101,512 | $ 60,736 | $ 40,776 | |

| In re:<br>AGUA DULCE VINEYARDS, LLC<br><br>Debtor(s). | Chapter 11<br>Lead Case No. 1:09-bk-15207-MT (Jointly Administered with  Catherine P.<br>MacAdam and Donal J. MacAdam – Case No. 1:09-bk-17476-MT) |
| --- | --- |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.

Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

10250 Constellation Boulevard, Suite 1700, Los Angeles, California 90067.

A true and correct copy of the foregoing document described as **AGUA DULCE VINEYARDS, LLC'S REPLY TO THE OBJECTION OF WESTERN COMMERCIAL BANK TO DEBTORS' MOTION TO EXTEND THE EXCLUSIVITY PERIODS FOR THE DEBTORS TO FILE A PLAN OR PLANS AND OBTAIN ACCEPTANCE THEREOF; MEMORANDUM OF POINTS AND AUTHORITIES  AND DECLARATION OF CATHERINE P. MACADAM IN SUPPORT THEREOF** will be served on the Judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **September 30, 2009** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Melody G Anderson     manderson@hemar.com
- Todd M Arnold     tma@lnbrb.com
- Martin J Brill     mjb@lnbrb.com
- Katherine Bunker     kate.bunker@usdoj.gov
- Lesley A Hawes     lhawes@mckennalong.com, pcoates@mckennalong.com
- Kenneth N Russak     krussak@frandzel.com, efiling@frandzel.com;banderson@frandzel.com
- Ramesh Singh     claims@recoverycorp.com
- United States Trustee (SV)     ustpregion16.wh.ecf@usdoj.gov

☐ Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **September 30, 2009**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

Via Overnight Mail
The Hon. Maureen Tighe
United States Bankruptcy Court
21041 Burbank Boulevard
Woodland Hills, CA 91367

☐ Service information continued on attached page

21

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **September 30, 2009** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

Service by E-Mail

Office of the U.S. Trustee
- Katherine Bunker    kate.bunker@usdoj.gov

Counsel for Western Commercial Bank
- Kenneth N. Russak    krussak@frandzel.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| September 30, 2009 | Lourdes Cruz | */s/ Lourdes Cruz* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.
*January 2009*                                                                                                    **F 9013-3.1**