1 | MARTIN J. BRILL (SBN 53220)
2 | JULIET Y. OH (SBN 211414)
  | TODD M. ARNOLD (SBN 221868)
3 | LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
  | 10250 Constellation Boulevard, Suite 1700
4 | Los Angeles, California 90067
  | Telephone:  (310) 229-1234
5 | Facsimile:  (310) 229-1244
  | Email:  mjb@lnbrb.com, jyo@lnbrb.com, tma@lnbrb.com
6 |
7 | Counsel for Debtors and Debtors in Possession

8 | **UNITED STATES BANKRUPTCY COURT**
  | **CENTRAL DISTRICT OF CALIFORNIA**
9 | **SAN FERNANDO VALLEY DIVISION**

10 |

| | |
|---|---|
| In re | ) Lead Case No. 1:09-bk-15207-MT |
| AGUA DULCE VINEYARDS, LLC, a California limited liability company, | ) (Jointly Administered with Catherine P. MacAdam and Donal J. MacAdam – Case No. 1:09-bk-17476-MT) |
| Debtor. | ) Chapter 11 Cases |
| In re | ) **DEBTORS' REPLY TO OPPOSITIONS TO DEBTORS' MOTION TO APPROVE:** |
| CATHERINE P. MACADAM and DONAL J. MACADAM, | ) |
| Debtors. | ) **(1) THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF AGUA DULCE VINEYARDS, LLC FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES;** |
| ☒ Affects All Debtors | ) **(2) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES AND EXECUTORY CONTRACTS; AND** |
| ☐ Affects Agua Dulce Vineyards, LLC only | ) **(3) THE EMPLOYMENT AND PAYMENT OF KENNEDY WILSON AUCTION GROUP, INC. AND ANY COOPERATING BROKER IN CONJUNCTION WITH THE SALE** |
| ☐ Affects Catherine P. MacAdam and Donal J. MacAdam only | ) |
| | ) Hearing: |
| | ) Date:  June 14, 2010 |
| | ) Time:  11:00 a.m. |
| | ) Place:  Courtroom "301" |
| | )          21041 Burbank Boulevard |
| | )          Woodland Hills, California 91367 |

4416

**1**

1   Agua Dulce Vineyards, LLC, a California limited liability company ("ADV"), and

2   Catherine P. and Donal J. MacAdam (the "MacAdams," and together with ADV, the "Debtors"),

3   debtors and debtors in possession in the above-captioned, jointly administered Chapter 11 cases,

4   hereby submit this reply to the oppositions (each, an "Opposition," and collectively, the

5   "Oppositions") filed by Encore Glass, Inc. ("Encore") and Associated Winery Systems ("AWS")

6   to the motion (the "Sale Motion")[1] filed by the Debtors seeking an order of the Court:

7       (i)  approving the sale of substantially all of ADV's assets (the "Assets") to Western

8           Commercial Bank ("Bank"), ADV's primary secured creditor, for a credit bid

9           purchase price of $6.1 million (subject to certain credits and adjustments), subject

10          to overbid, free and clear of all liens, claims, interests, and encumbrances,

11          pursuant to 11 U.S.C. § 363(f), on the terms set forth in the Sale Motion and in

12          the various sale agreement and related documents attached to the Sale Motion

13          (collectively, the "Sale Documents"), including, among others, a list of executory

14          contracts and unexpired leases (collectively the "Contracts") ADV is seeking to

15          assume and assign to the Bank, with cure amounts for such Contracts (the "Cure

16          Amounts");

17      (ii)  approving the assumption of the Contracts by ADV and the assignment thereof to

18          Bank or an accepted overbidder pursuant to 11 U.S.C. § 365;

19      (iii)  approving the Cure Amounts for the Contracts and deeming the failure of a

20          counter-party to any of the Contracts to object to the proposed Cure Amount and

21          assumption and assignment to be a waiver of such objection;

22      (iv)  approving the employment and payment of Kennedy Wilson Auction Group, Inc.

23          ("KW") and any cooperating broker in conjunction with the proposed sale;

24      (v)  waiving the 14-day stay periods set forth in Federal Rules of Bankruptcy

25          Procedure 6004(h) and 6006(d);

26

27       [1] All capitalized terms not specifically defined herein shall have the meanings ascribed to them in the Sale Motion.

28

**2**

1          (vi)     authorizing the Debtors to take all necessary and reasonable steps to consummate

2                   the sale of the Assets and the assumption and assignment of the Contracts; and

3          (vii)    granting such other relief as is just and proper under the circumstances.

4          Only two (2) parties filed Oppositions to the Sale Motion – Encore and AWS.  For the

5    reasons described in detail below, the Debtors respectfully submit that both Oppositions should

6    be overruled.  Further, in response to issues raised by the Bank, the Debtors request Court

7    approval of certain modifications to the Sale Motion, as described below.

8    **A.     The Objections Made By Encore Are Irrelevant Or Factually And/Or Legally**

9            **Inaccurate.**

10         In its Opposition, Encore lists six (6) purported grounds for objecting to the Sale Motion

11   Each of the grounds listed in Encore's Opposition is either irrelevant to the relief requested in the

12   Sale Motion or is factually and/or legally inaccurate.

13         1.      First, Encore contends that the Debtors failed "to give sufficient notice to Encore

14   and other creditors" of the Sale Motion.[2]  However, the Debtors filed and served the Sale Motion

15   and notice thereof upon creditors and other parties in interest on **regular notice** on May 24,

16   2010, within the 21-day period prescribed by both the Federal Rules of Bankruptcy Procedure

17   and the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of

18   California.[3]  There is no question that Debtors provided sufficient and adequate notice of the Sale

19   Motion in compliance with all applicable rules.    Encore's complaint about notice rings

20   particularly hollow since, notwithstanding Encore's complaint to the contrary, Encore clearly

21   had sufficient time to evaluate the proposed transaction and file a formal objection to the Sale

22   Motion.

23         2.      Encore contends that the Debtors failed "to market the vineyard property for a

24   reasonable period of time or even comply with the Court's Order of May 3, 2010, re same[ ]"[4]

25   ───────────────
          [2]  See, Opposition filed by Encore, p. 2, lines 6-7.

26        [3]  See, Federal Rule of Bankruptcy Procedure 2002(a)(2) and Local Bankruptcy Rule 9013-
     1(d)(2).
27
          [4]  See, Opposition filed by Encore, p. 2, lines 8-9.
28

                                            **3**

1  The Debtors assume that Encore is referring to the Court's order approving certain sale

2  procedures to be employed in connection with the proposed sale of the Debtors' assets, which

3  order was entered by the Court on May 14, 2010 [Docket No. 141] (the "Sale Procedures

4  Order").   In accordance with the Sale Procedures Order, KW began marketing the Assets,

5  including the vineyard property, on May 13, 2010 and will continue marketing such Assets for a

6  period of 42 days (increased from the initially proposed 30 days) through June 24, 2010.  The

7  marketing plan created by the Debtors and KW, a highly-regarded broker with extensive

8  experience marketing and selling commercial properties, is described in detail in the Sale

9  Motion.  The Debtors submit that the timing and extent of the marketing proposed by KW, which

10 is uniquely qualified to sell properties under such circumstances, is more than adequate.

11 Encore's unsupported conclusion regarding the marketing required for the Assets should be

12 disregarded.

13        3.     Encore claims that there is a "substantial discrepancy in valuation of the vineyard

14 property within just one month."[5]  Encore claims that, at the time the Court approved the sale

15 procedures, the Debtors represented to creditors and the Court that their assets were valued

16 between $10-15 million, but that in the Sale Motion, the Debtors represented that their assets

17 were valued at $6.1 million.  Encore has confused the facts.  As explained in the Debtors' motion

18 for approval of the sale procedures, the Assets (which belong to ADV) and the 53 acre parcel of

19 vacant land adjoining the ADV-owned real property (which belongs to the Bank) (the "Bank

20 Property") are estimated to have a combined value between $10-15 million.  The Assets owned

21 by ADV, in and of themselves, are anticipated to have a value of $6.1 million.  Thus, there has

22 been no discrepancy in the valuation of the Assets.

23        4.     Encore argues that the Debtors' failure to submit a plan constitutes grounds for

24 denying the Sale Motion.  Encore simply has it backwards.  Without a sale, the Debtors will

25 never be in a position to propose a feasible plan of reorganization or liquidation.  ADV has been

26

27        [5] See, Opposition filed by Encore, p. 2, lines 10-11.

28

**4**

1    unsuccessful in obtaining additional funding and/or an equity investment, and due to the general

2    downturn in the economy, ADV has been unable to increase revenue so that it can operate on a

3    net-profit basis and remain current on leases necessary for continued operations. In the absence

4    of a sale, the Assets will likely lose value, and the Bank will ultimately foreclose on the Assets,

5    which will eliminate any possibility of recovery to the Debtors' other creditors.

6        5.    In its Opposition, Encore states that there has been an "absence of current

7    financial disclosures on Debtors."[6]  On the contrary, the Debtors provided detailed financial

8    information as part of their Schedules of Assets and Liabilities, Statements of Financial Affairs

9    and 7-Day Packages filed at the outset of their cases, and have filed monthly operating reports

10   during the course of their cases, as required by the Office of the United States Trustee.  In

11   addition, the Debtors have provided detailed financial information, including a description of the

12   Assets and the claims asserted against such Assets, in the Sale Motion.  Even if Encore's

13   contention regarding the absence of current financial disclosures was true (which it is not), it is

14   unclear how that is relevant to the Debtors' request to maximize the value of the Assets by

15   selling them to a willing buyer, subject to overbids.  The Assets are what they are, and the value

16   of such Assets will be what the market bears.

17       6.    Finally, Encore contends that there has been an "absence of an examination of

18   Debtors under 11 USC § 341 et seq."[7]  On the contrary, the Section 341(a) meeting of creditors

19   for ADV was held and concluded on or about June 9, 2009, and the Section 341(a) meeting of

20   creditors for the MacAdams was held and concluded on or about August 26, 2009.

21   **B.    The Issues Raised By AWS In Its Opposition Have Already Been Addressed Or Are**

22       **Irrelevant.**

23       In its Opposition, AWS requests that any order granting the Sale Motion include a

24   mechanism for the issues listed therein (and described below).  Each of the issues listed in

25

26   _____

27       [6] See, Opposition filed by Encore, p. 2, line 14.

         [7] See, Opposition filed by Encore, p. 2, line 15.

28

1  AWS's Opposition is irrelevant to the relief requested in the Sale Motion or is premature at this
2  time.

3      1.      AWS requests that a mechanism be established for the "issue of ensuring that the
4  buyer will be a financially viable entity to be able to comply with the payment obligations[.]"[8]
5  As the Sale Motion expressly states, the Bank or a successful overbidder will be required to pay
6  the Cure Amounts for the Contracts it agrees to assume in connection with its purchase of the
7  Assets.  To the extent required by any party to a Contract (including AWS), the Bank or a
8  successful overbidder will be required to provide adequate assurance of future performance
9  under such Contract in accordance with Section 365(b) of the Bankruptcy Code.  Accordingly,
10  there is already a mechanism in place to address this issue.

11      2.      AWS requests that an order granting the Sale Motion include "remedies available
12  to AWS should the buyer default under the assumed lease."[9]  If the Debtors' contract/lease with
13  AWS is rejected, this issue is moot.  However, if the Debtors' contract/lease with AWS is
14  assumed and assigned to the Bank or a successful overbidder, AWS will be entitled to the
15  remedies set forth in such contract/lease and under applicable state law.  This type of "adequate
16  assurance" issue is ultimately an issue between AWS and the buyer, and does not involve the
17  Debtors or their estates.

18      3.      In its Opposition, AWS also requests that an order granting the Sale Motion
19  include a "procedure or timing for assuming or rejecting the obligation to AWS, and against
20  whom AWS would proceed if the obligation is rejected (that is, who would have the obligation
21  to return the equipment)[.]"[10]  As the Sale Motion expressly states, ADV will include provisions
22  in the order granting the Sale Motion that the assumption and assignment of the Contracts will
23  not be effective until the respective Cure Amounts are paid.  This will ensure that the Cure
24  Amounts will be paid to the counter-parties to the Contracts before any assignment of their

[8] See, Opposition filed by AWS, p. 2, lines 11-12.
[9] See, Opposition filed by AWS, p. 2, lines 13-14.
[10] See, Opposition filed by AWS, p. 2, lines 15-17.

1    respective Contracts will occur and before there is a release of the MacAdams to the extent they

2    have guaranties for any of the obligations under the Contracts. Accordingly, there is already a

3    procedure/timing in place for the assumption and assignment of the Contracts. To the extent any

4    of the Contracts are to be rejected, the Debtors submit that the procedure and/or timing for doing

5    so are governed by the Bankruptcy Code. However, the Debtors expect that they will seek

6    authority to reject any Contracts that are not assumed and assigned to the Bank (or a successful

7    overbidder) immediately after the closing of the sale. In the event that the AWS contract/lease is

8    rejected, the obligation to return the equipment will be governed by the terms of the

9    contract/lease.

10    4.    Finally, AWS requests that an order granting the Sale Motion include "the impact

11    upon any claim AWS might have against [ADV]."[11] The allowance and treatment of the claim

12    asserted by AWS is governed by the Bankruptcy Code. If the Debtors' contract/lease with AWS

13    is assumed and assigned to the Bank (or a successful overbidder), AWS's allowed claim will be

14    paid in full. On the other hand, if the Debtors' contract/lease with AWS is rejected, AWS will be

15    entitled to a general unsecured claim for rejection damages. Accordingly, no "mechanism" is

16    required to address this issue.

17    **C.    Proposed Modifications To The Sale Motion In Response To Issues Raised By The**

18    **Bank.**

19    *1.    Lot Line Adjustment Issue*

20    The Bank recently informed the Debtors of the impact of a lot line adjustment affecting

21    the Bank-owned property, which was purportedly made without the Bank's knowledge.

22    Pursuant to the Deed of Trust dated October 29, 2007 (the "Deed of Trust"), which was recorded

23    for the benefit of Bank on October 31, 2007, in the Official Records of Los Angeles County,

24    California (the "Official Records"), as Instrument No. 2007-2457271, a lien was created against

25

26

27    [11] See, Opposition filed by AWS, p. 2, lines 18-19.

28

**7**

1  that certain real property legally described on Exhibit A, attached hereto and made a part hereof

2  (the "Pre-Lot Line Property").

3      ADV undertook a lot line adjustment (the "Lot Line Adjustment") with respect to the

4  Pre-Lot Line Property, pursuant to that certain Tentative Lot Line Adjustment Map No. 2006-

5  00036, which was subsequently recorded on November 2, 2007, as Instrument No. 2007-

6  2476394. As a result of the Lot Line Adjustment, the boundaries of the Pre-Lot Line Property

7  were modified to be as described on Exhibit B, attached hereto and made a part hereof (the

8  "Post-Lot Line Property"). The Lot Line Adjustment was perfected by (a) that certain Quitclaim

9  Deed, dated January 23, 2008, and recorded on January 29, 2008, in the Official Records as

10  Instrument No. 2008-0171246, and (b) that certain Grant Deed, dated January 20, 2008, and

11  recorded on January 29, 2008, in the Official Records, as Instrument No. 2008-0171247.

12      The Bank contends that, to its knowledge, it did not consent to the Lot Line Adjustment.

13  Additionally, the Deed of Trust was not amended to incorporate the additional real property

14  added to the Pre-Lot Line Property by the Lot Line Adjustment.

15      As indicated in the Sale Motion, the Bank non-judicially foreclosed on the Pre-Lot Line

16  Property, and took title thereto pursuant to that certain Trustee's Deed, dated September 28,

17  2009, and recorded on October 8, 2009, in the Official Records, as Instrument No. 2009-

18  1532940.

19      As of the date hereof, Bank is the owner of the portion of the Post-Lot Line Property that

20  constitutes the Pre-Lot Line Property, and ADV is the owner of the remainder. To comply with

21  the Subdivision Map Act, California Government Code Section 66410, et seq., the Pre-Lot Line

22  Property and the Post-Lot Line Property must be sold together.

23      As set forth in the Sale Motion, ADV and the Bank have agreed to sell the Post-Lot Line

24  Property, along with other real and personal property owned by ADV, pursuant to a Section 363

25  sale. Fidelity National Title Company (the "Title Company") has agreed to provide an owner's

26  policy of title insurance to the person or entity that takes title to the Post-Lot Line Property

27  following the conclusion of such sale. In connection with the issuance of such title insurance,

28

**8**

1  Title Company has required that ADV first quitclaim all of its right, title, and interest in and to

2  the Post-Lot Line Property to the Bank, such that Bank will be the sole owner of the entirety of

3  the Post-Lot Line Property.  ADV has no objection to the foregoing, and seeks to modify the

4  Sale Motion to authorize the Debtor to execute and record a quitclaim deed for the foregoing

5  purpose, in the form attached hereto as Exhibit C.

6      *2.    Discretion To Reduce Minimum Overbid Amount*

7          In addition, given the current depressed state of the real estate market, particularly for

8  specialized properties such as the ones being marketed in these cases, and pursuant to the request

9  of the Bank, the Debtors seek to modify the Sale Motion and the sale procedures related thereto

10  to provide the Debtors with discretion (in collaboration with the Bank) to reduce the Minimum

11  Overbid Amount.

12          For all of the reasons set forth above, the Debtors respectfully requests that the Court

13  enter an order (i) overruling the Oppositions, (ii) granting the Sale Motion in its entirety, subject

14  to the modifications set forth herein, and (iii) granting such other relief as is just and proper

15  under the circumstances.

16  Dated:  June 7, 2010                         AGUA DULCE VINEYARDS, LLC,
17                                               a California limited liability company

18                                               CATHERINE P. MACADAM and
                                                 DONAL J. MACADAM
19

20                                               By:____/s/ Martin J. Brill_____.
                                                     MARTIN J. BRILL
21                                                   LEVENE, NEALE, BENDER, RANKIN
                                                     & BRILL L.L.P.
22                                                   Attorneys for Debtors in Possession

23

24

25

26

27

28

# EXHIBIT A
## PRE-LOT LINE PROPERTY

THAT PORTION OF THE EAST HALF OF THE NORTHEAST QUARTER AND THE EAST HALF OF THE SOUTHEAST QUARTER OF SECTION 14, TOWNSHIP 5 NORTH, RANGE 14 WEST, SAN BERNARDINO MERIDIAN, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, LYING WESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT DISTANT ALONG THE SOUTHERLY LINE OF SAID SECTION, NORTH 89 DEGREES 38 MINUTES 30 SECONDS WEST 670.09 FEET FROM THE SOUTHEAST CORNER OF SAID SECTION; THENCE NORTH 0 DEGREES 18 MINUTES 10 SECONDS EAST 1773.62 FEET; THENCE NORTH 89 DEGREES 36 MINUTES 00 SECONDS WEST 183.00 FEET, THENCE NORTH 0 DEGREES 18 MINUTES 10 SECONDS EAST 200.00 FEET; THENCE SOUTH 89 DEGREES 36 MINUTES 00 SECONDS EAST 366.00 FEET; THENCE NORTH 0 DEGREES 18 MINUTES 10 SECONDS EAST 200.00 FEET; THENCE NORTH 89 DEGREES 36 MINUTES 00 SECONDS WEST 183.00 FEET; THENCE NORTH 0 DEGREES 18 MINUTES 10 SECONDS  EAST TO THE NORTHERLY LINE OF SAID SECTION.

EXCEPT THEREFROM THAT PORTION LYING NORTHERLY OF THE CENTERLINE OF SIERRA HIGHWAY, 100 FEET WIDE.

ALSO EXCEPT THAT PORTION OF SAID LAND, DESCRIBED AS FOLLOWS:

THE SOUTHERLY 208.71 FEET, MEASURED AT RIGHT ANGLES TO THE SOUTHERLY LINE OF SAID SOUTHEAST QUARTER OF SAID SECTION 14.

SAID LAND IS ALSO DESCRIBED AS PARCEL 1 IN CERTIFICATE OF COMPLIANCE NO. 101,903 RECORDED OCTOBER 5, 2001 AS INSTRUMENT NO. 01-1899438, OFFICIAL RECORDS.

# EXHIBIT B

## POST-LOT LINE PROPERTY

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

THAT PORTION OF THE EAST HALF OF THE NORTHEAST QUARTER, AND OF THE EAST HALF OF THE SOUTHEAST QUARTER, OF SECTION 14, TOWNSHIP 5 NORTH, RANGE 14 WEST, SAN BERNARDINO MERIDIAN, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHEASTERLY CORNER OF PARCEL 1 DESCRIBED IN INSTRUMENT NO. 00-0608226 RECORDED APRIL 21, 2000, AS SHOWN ON RECORD OF SURVEY RECORDED IN BOOK 183, PAGE 23 OF RECORDS OF SURVEY IN THE OFFICE OF THE RECORDER OF SAID COUNTY; THENCE ALONG THE EASTERLY BOUNDARY OF SAID PARCEL 1 N 0°17' 28" E 208.71 FEET TO THE NORTHEASTERLY CORNER OF DOCUMENT NO. 20070266687 RECORDED FEBRUARY 7, 2007, SAID NORTHEASTERLY CORNER BEING THE TRUE POINT OF BEGINNING; THENCE CONTINUING ALONG THE EASTERLY BOUNDARY OF SAID PARCEL 1, AND THE NORTHERLY PROLONGATION THEREOF, N 0° 17' 28" E 1758.62 FEET; THENCE S 89° 36' 42" E 300.00 FEET; THENCE N 0° 17' 28" E 300.54 FEET; THENCE N 89° 36' 42" W 300.00 FEET; THENCE N 0° 17' 28" E 1091.05 FEET TO THE CENTERLINE OF SIERRA HIGHWAY; THENCE ALONG SAID CENTERLINE N 88° 50' 02" W 658.59 FEET TO THE WESTERLY LINE OF THE EAST HALF OF THE NORTHEAST QUARTER OF SAID SECTION 14; THENCE SOUTHERLY ALONG SAID WESTERLY LINE S 0° 29' 56" W 704.19 FEET TO THE NORTHWEST CORNER OF THE EAST HALF OF THE SOUTHEAST QUARTER AND THE SOUTHWEST CORNER OF THE EAST HALF OF THE NORTHEAST QUARTER OF SAID SECTION 14; THENCE SOUTHERLY ALONG THE WESTERLY LINE OF THE EAST HALF OF THE SOUTHEAST QUARTER OF SAID SECTION 14 S 0° 28' 21" W 2455.44 FEET TO THE NORTHWESTERLY CORNER OF THE ABOVE-MENTIONED DOCUMENT NO. 20070266687; THENCE ALONG THE NORTHERLY LINE OF SAID DOC. NO. 20070266687 S 89° 39' 12" E 668.84 FEET TO THE TRUE POINT OF BEGINNING.

APN: 3213-016-44 and 3213-016-46

## EXHIBIT C
## QUITCLAIM DEED

**[See Attached]**

714535.1

RECORDING REQUESTED BY AND

Fidelity National Title Insurance Company

WHEN RECORDED MAIL TO

WESTERN COMMERCIAL BANK
Attention: Kathleen C. Bryan,
  Executive Vice President/Chief Credit Officer
21550 Oxnard Street, Suite 100
Woodland Hills, CA 91367

APN: 3213-016-44 and 3213-016-46

---

In accordance with §1191 of the California Revenue and Taxation Code, the value of this property in this conveyance, exclusive of liens and encumbrances is $100 or less, and there is no additional consideration received by the Grantor. No documentary transfer tax is due.

## QUITCLAIM DEED

FOR VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, AGUA DULCE VINEYARDS, LLC, a California limited liability company ("Grantor"), hereby remises, releases, and forever quitclaims to WESTERN COMMERCIAL BANK, a California banking corporation ("Grantee"), all of Grantor's right, title, and interest in and to the real property located in the County of Los Angeles, State of California, and legally described on Exhibit A, attached hereto and made a part hereof.

**Grantor:**

AGUA DULCE VINEYARDS, LLC
a California limited liability company

By: _____ _____

Name: _____

Title: _____

STATE OF CALIFORNIA                )
COUNTY OF _____ _____ )


On _____ before me, _____ _____ _____
a    Notary    Public    in    and    for    said    County    and    State,    personally    appeared
_____ who proved to me on the basis of satisfactory evidence to be the
person whose name is subscribed to the within instrument and acknowledged to me that she
executed the same in her authorized capacity, and that by her signature on the instrument the
person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that
the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ _____

## EXHIBIT A TO QUITCLAIM DEED

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

THAT PORTION OF THE EAST HALF OF THE NORTHEAST QUARTER, AND OF THE EAST HALF OF THE SOUTHEAST QUARTER, OF SECTION 14, TOWNSHIP 5 NORTH, RANGE 14 WEST, SAN BERNARDINO MERIDIAN, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHEASTERLY CORNER OF PARCEL 1 DESCRIBED IN INSTRUMENT NO. 00-0608226 RECORDED APRIL 21, 2000, AS SHOWN ON RECORD OF SURVEY RECORDED IN BOOK 183, PAGE 23 OF RECORDS OF SURVEY IN THE OFFICE OF THE RECORDER OF SAID COUNTY; THENCE ALONG THE EASTERLY BOUNDARY OF SAID PARCEL 1 N 0°17' 28" E 208.71 FEET TO THE NORTHEASTERLY CORNER OF DOCUMENT NO. 20070266687 RECORDED FEBRUARY 7, 2007, SAID NORTHEASTERLY CORNER BEING THE TRUE POINT OF BEGINNING; THENCE CONTINUING ALONG THE EASTERLY BOUNDARY OF SAID PARCEL 1, AND THE NORTHERLY PROLONGATION THEREOF, N 0° 17' 28" E 1758.62 FEET; THENCE S 89° 36' 42" E 300.00 FEET; THENCE N 0° 17' 28" E 300.54 FEET; THENCE N 89° 36' 42" W 300.00 FEET; THENCE N 0° 17' 28" E 1091.05 FEET TO THE CENTERLINE OF SIERRA HIGHWAY; THENCE ALONG SAID CENTERLINE N 88° 50' 02" W 658.59 FEET TO THE WESTERLY LINE OF THE EAST HALF OF THE NORTHEAST QUARTER OF SAID SECTION 14; THENCE SOUTHERLY ALONG SAID WESTERLY LINE S 0° 29' 56" W 704.19 FEET TO THE NORTHWEST CORNER OF THE EAST HALF OF THE SOUTHEAST QUARTER AND THE SOUTHWEST CORNER OF THE EAST HALF OF THE NORTHEAST QUARTER OF SAID SECTION 14; THENCE SOUTHERLY ALONG THE WESTERLY LINE OF THE EAST HALF OF THE SOUTHEAST QUARTER OF SAID SECTION 14 S 0° 28' 21" W 2455.44 FEET TO THE NORTHWESTERLY CORNER OF THE ABOVE-MENTIONED DOCUMENT NO. 20070266687; THENCE ALONG THE NORTHERLY LINE OF SAID DOC. NO. 20070266687 S 89° 39' 12" E 668.84 FEET TO THE TRUE POINT OF BEGINNING.

APN: 3213-016-44 and 3213-016-46

| In re: | | CHAPTER 11 |
|---|---|---|
| **AGUA DULCE VINEYARDS, LLC,** | | |
| | Debtor(s). | **CASE NO. 1:09-bk-15207-MT** |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10250 Constellation Blvd., Suite 1700, Los Angeles, CA 90067.

A true and correct copy of the foregoing document described as: **DEBTORS' REPLY TO OPPOSITIONS TO DEBTORS' MOTION TO APPROVE: (1) THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF AGUA DULCE VINEYARDS, LLC FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (2) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES AND EXECUTORY CONTRACTS; AND (3) THE EMPLOYMENT AND PAYMENT OF KENNEDY WILSON AUCTION GROUP, INC. AND ANY COOPERATING BROKER IN CONJUNCTION WITH THE SALE**, will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.** <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ["NEF")</u> – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **June 7, 2010**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Service information on attached page [X]

**II.** <u>SERVED BY U.S. MAIL OR OVERNIGHT MAIL OR ATTORNEY SERVICE</u>: On **June 7, 2010**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service and/or by attorney service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

Bankruptcy Judge                              ***BY ATTORNEY SERVICE***
Hon. Maureen A. Tighe
U. S. Bankruptcy Court
San Fernando Valley Division
21041 Burbank Blvd., Suite 325
Woodland Hills, CA 91367

Service information on attached page [X]

**III.** <u>SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL</u> (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

Service information on attached page [ ]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

June 7, 2010                    TRISH MELENDEZ
_____              _____              _____
Date                          Type Name                     Signature

## I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ["NEF"]

*Melody G Anderson on behalf of Interested Party Courtesy NEF*
*manderson@hemar.com*

*Todd M Arnold on behalf of Debtor Agua Dulce Vineyards, LLC*
*tma@lnbrb.com*

*Martin J Brill on behalf of Debtor Agua Dulce Vineyards, LLC*
*mjb@lnbrb.com*

*Katherine Bunker on behalf of U.S. Trustee United States Trustee (SV)*
*kate.bunker@usdoj.gov*

*Lesley A Hawes on behalf of Creditor Merchant eSolutions, Inc.*
*lhawes@mckennalong.com, pcoates@mckennalong.com*

*Kenneth N Russak on behalf of Creditor Western Commercial Bank*
*krussak@frandzel.com, banderson@frandzel.com;efiling@frandzel.com*

*Ramesh Singh on behalf of Interested Party Courtesy NEF*
*claims@recoverycorp.com*

*United States Trustee (SV)*
*ustpregion16.wh.ecf@usdoj.gov*

## II.  SERVED BY U.S. MAIL

| *Attorneys for Creditor, Associated Winery Systems* | *Attorneys for Unsecured Creditor, Encore Glass, Inc.* |
|---|---|
| Bruce A. Hatkoff, Esq. | Thomas Von Thury, Esq. |
| Natalia A. Minassian, Esq. | JG, P.C., Business & Corporate Law |
| Bruce A. Hatkoff, a Law Corp. | 5890 Stoneridge Drive, Suite 102 |
| 16633 Ventura Blvd., Suite 940 | Pleasanton, CA  94588 |
| Encino, CA  91436-1801 | T:  925/463-9600 |
| T:  818/990-5180 | E:  tvonthury@jgpc.com |
| F:  818/990-2463 | |